UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA FRAWLEY,<br><br>    *Plaintif,*<br><br>v.<br><br>MEDICAL MANAGEMENT GROUP OF NEW YORK, INC.,<br><br>    *Defendant.* | No. 21-cv-8894<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, by and through her attorneys, alleges as follows:

<u>Preliminary Statement</u>

1. This class action seeks to remedy systemic discriminatory practices that order people to submit to "Independent Medical Examinations" (IMEs) at medical offices that are inaccessible or fail to provide accommodations to people with disabilities (Class Members).

2. Defendant is a for-profit company that contracts with insurance carriers, lawyers, and others to schedule IMEs. These examinations are widely used to evaluate and oppose claims of injury in workers' compensation, personal injury, and similar cases.

3. Defendant maintains a network of doctors and other medical providers to perform IMEs. Defendant controls which doctors to include in this network, sets conditions on their work, and monitors their performance under its auspices.

4. Defendant routinely sends legal notices that require Class Members to attend IMEs at a specified doctors' office, at a designated date and time. The IMEs are often mandatory for Class Members to pursue their claims.

5. However, defendant routinely schedules people with disabilities for IMEs in offices that are not accessible to them. Defendant sent plaintiff Donna Frawley, who uses an electric scooter for mobility, to doctors' offices that can only be reached by a flight of steps, are too small for her scooter to fit in the examination room, lack accessible equipment or restrooms, and have other serious accessibility barriers.

6. Defendant also schedules people with disabilities for IMEs in doctors' offices that have policies and procedures systematically denying accommodations to people with disabilities. Plaintiff Frawley has a compromised immune system yet was sent to a doctors' office that required her to wait in a crowded waiting room for the appointment during the height of the COVID pandemic. The doctor's office refused her request to wait outside.

7. In scheduling these inaccessible IMEs, defendant has ignored disabilities it knows or should know about. It has even affirmatively flouted express requests for accommodation—including, for Ms. Frawley, a court order.

8. If Class Members do not attend the IMEs, they risk losing their claims. If they do attend these inaccessible and discriminatory IMEs, they are degraded, humiliated, and face safety risks.

9. Defendant's actions violated and continue to violate the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law.

## Jurisdiction and Venue

10. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question).

11. The Court has jurisdiction over plaintiff's pendant state law claims under 28 U.S.C. § 1367 (supplemental jurisdiction). Plaintiff's state law claims are parts of the same case or controversy as plaintiff's federal claim because they arise out of the same circumstances.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391. A substantial part of the acts and/or omissions giving rise to the claims alleged in this Complaint occurred within this district.

Parties

13. Plaintiff Donna Frawley is a resident of Dutchess County, New York.

14. Ms. Frawley has disabilities within the meaning of the applicable laws. She uses an electric scooter for mobility and has a compromised immune system from chemotherapy.

15. Defendant Medical Management Group of New York, Inc. (MMG) is a New York corporation with its principal place of business in Bohemia, New York.

Factual Allegations

16. MMG describes itself as a "complete source for Independent Medical Examination appointment services." It says, "We facilitate the entire process, from appointment scheduling to report distribution … assuring that all necessary issues are addressed."[1]

17. Many IMEs arise in cases involving injury or illness that constitutes a disability under applicable laws. The disability is often the subject of the case. Extensive medical information is shared. Yet MMG lacks policies and procedures to accommodate these known disabilities.

---

[1] Medical Management Group, Independent Medical Examination Administrative and Report Distribution Services, https://medicalmanagementime.com/service1.shtml (last visited Oct. 29, 2021).

18. MMG says it "maintains a panel of over 6,000 board certified physicians who have facilities in compliance with the Americans with Disabilities Act (ADA)."[2] It boasts having scheduled more than 500,000 IMEs and other services with its panel of doctors since 1987.[3]

19. MMG maintains a panel of doctors through its "Physician Credentialing Protocol." This protocol allegedly requires the panel doctors to be "ADA Compliant." [4]

20. Other requirements for MMG panel physicians include board certification, licensing, and New York State Workers' Compensation Authorized Independent Medical Examiner status.[5]

21. To accept doctors into its network, MMG requires proof and inspects doctors' offices to ensure compliance with some of the requirements in its Physician Credentialing Protocol[6] but, on information and belief, does not inspect, require proof, or take other reasonable measures to assure disability law compliance.

22. Indeed, MMG routinely ignores known non-compliance with disability law.

23. Even after initial acceptance, MMG has a "Quality Assurance" department that continues to monitor compliance with requirements outside of disability law, such as "timeliness, quality of reports, and the physician's ability to provide credible testimony."[7] On information and belief, MMG does nothing to monitor its panel's disability law compliance.

24. MMG routinely discriminates against people with disabilities in at least the following ways:

---

[2] Medical Management Group, Physician Credentialing Protocol, https://medicalmanagementime.com/credentialing.shtml (last visited Oct. 29,2021).
[3] Medical Management Group, About Us, https://medicalmanagementime.com/aboutus.shtml (last visited Oct. 29, 2021).
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.*

   a. It schedules people with disabilities for IMEs in offices with physical barriers or that lack accessible facilities such that independent access is impossible, difficult, or dangerous for the person because of a disability which is known or should be known to MMG.

   b. It lacks policies and procedures to provide accommodations and auxiliary aids and services necessary for IMEs to be safe, effective, and nondiscriminatory for people with disabilities.

   c. It lacks policies and procedures to consider requests for reasonable accommodation in IMEs. Indeed, it provides incorrect information about the accessibility of IMEs in response to such requests.

<u>Plaintiff Donna Frawley</u>

25. Donna Frawley uses an electric scooter for mobility because of disabilities. She also has a compromised immune system.

26. Ms. Frawley was injured in Bronx, New York and commenced a lawsuit in New York Supreme Court, Bronx County, in 2016.

27. The defendant in that case engaged MMG to schedule IME examinations, which Ms. Frawley was required to attend to pursue her case. She needed two IMEs, an orthopedic and a neurological exam.

28. Ms. Frawley received IME notices directly from MMG, on MMG letterhead, which read "MMG has been assigned by [defense counsel] to provide an independent medical examination."

29. In January 2020, MMG scheduled Ms. Frawley to see an orthopedist in the Bronx. Ms. Frawley travelled to the doctor's office and her husband took the day off work to assist her.

30. The path of travel was inaccessible to her motorized scooter, including ridges that caused two wheels of her scooter to come off the ground and an elevator that was too tight to maneuver independently, as well was a waiting room too crowded for her to navigate.

31. Ms. Frawley was kept waiting in the crowded waiting room past her appointment time, even after she advised the doctor's office staff that she was immune compromised and needed to wait in a safer location. She was unable to complete the orthopedic examination because it was not safe for her to continue to wait.

32. In February 2020, MMG sent a notice ordering Ms. Frawley to an appointment with a neurologist in the Bronx. Ms. Frawley called MMG and the doctor's office, and both assured her the office was wheelchair accessible. It was not. The path of travel was too narrow and the bathroom was completely inaccessible. Ms. Frawley scratched her scooter and injured her knee in the narrow, inaccessible quarters.

33. Even more egregiously, the neurologist did not have an examination room accessible to her scooter. The doctor had her pull her chair halfway into the door and examined her halfway in the hallway. He completed the neurological examination with everyone in the office listening.

34. Ms. Frawley had to use the bathroom even though it was inaccessible. She was unable to close the door; her husband held her coat up over the doorway to try to give her privacy.

35. The doctor admitted they were "not an accessible office" and that Ms. Frawley should not have been told they were. The doctor said she should have used the bathroom at the Dunkin' Donuts across the street.

36. After that experience, on February 5, 2020, Ms. Frawley's lawyer obtained a court stipulation and order requiring the remaining orthopedic IME to be conducted "@ facility that is accessible for plaintiff's electric scooter and accommodates her chemotherapy immune suppression treatment."

37. Despite the court order, MMG scheduled another orthopedic IME in late February 2020 in the same office as the original orthopedic IME, with the inaccessible path of travel and elevator and crowded waiting room. She asked for a different location.

38. In April 2021, MMG scheduled Ms. Frawley for an orthopedic IME at a different location, which it again claimed was accessible. MMG also claimed she would be allowed to wait for the appointment in her car to accommodate her immune compromise.

39. Ms. Frawley went to this third MMG scheduled IME at a doctor's office, with her husband again taking the day off work to help her. They drove to the office and paid for parking. When she arrived, she called the office. The office told her she could not wait in the car for the appointment; she had to come in and wait in the office or she would not be seen.

40. Feeling she had few options on this third attempt to complete the orthopedic IME, Ms. Frawley went into the office.

41. Ms. Frawley opened the door. She was confronted by a narrow flight of steps leading to the second floor. No elevator. She called the doctor's office. They confirmed they were not an accessible office. They said MMG must have sent her to the wrong office.

42. Ms. Frawley called MMG. MMG continued to deny the doctor's office was inaccessible, speculating maybe the elevator was out of service.

43. Ms. Frawley has still not completed the orthopedic IME in her case, and therefore continues to face indefinite delay in adjudication of her claims, as a direct result of MMG's failure to provide an accessible IME.

## Class Action Allegations

44. Pursuant to Federal Rule of Civil Procedure 23(b)(2), named plaintiff Donna Frawley brings this action for injunctive and declaratory relief on her own behalf, and on behalf of all persons similarly situated.

45. The class that plaintiff seeks to represent is composed of all people with disabilities that require reasonable accommodation, including for MMG to modify its policies and procedures to schedule their IMEs with a doctor that can provide the physical accessibility and/or reasonable accommodations in doctors' office policies and procedures in order to have equal and safe access to the office's medical services, who have been or reasonably fear they will be subject to MMG's discriminatory scheduling of IMEs at physically inaccessible facilities, discriminatory lack of policies and procedures to accommodate disabilities that are known or reasonably should be known, and discriminatory failure to respond to requests for reasonable accommodations.

46. The class claims asserted herein are solely for injunctive and declaratory relief for class members; damage claims are not included in the class allegations.

47. The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and the Court. According to the Centers for Disease Control, 1 in 4 New York State residents have a

disability, and 13% -- more than 2.5 million New Yorkers -- have a mobility disability with serious difficulty walking or climbing stairs.[8]

48. There is a well-defined community of interest in the questions of law and fact involved affecting the persons to be represented in that they are all being subjected to discrimination by MMG in IME scheduling and procedures.

49. Common questions of law and fact predominate, including, but not limited to

   a. Whether defendant violates disability discrimination laws by scheduling people with mobility disabilities for IMEs in doctors' offices that are inaccessible;

   b. Whether defendant violates disability discrimination laws by lacking policies and procedures to accommodate disabilities that they know or should know about; and

   c. Whether defendant violates disability discrimination laws by systematically refusing requests for reasonable accommodation.

50. Plaintiff is an adequate class representative because she is directly impacted by defendant's consistent failures to make its service accessible and nondiscriminatory to people with disabilities. Plaintiff's interests are not antagonistic to, or in conflict with, the interests of the class as a whole.

51. The attorneys representing the class are highly trained, duly qualified, and experienced in representing plaintiffs in civil rights class actions.

---

[8] Centers for Disease Control and Prevention, Disability & Health U.S. State Profile Data for New York (Adults 18+ years of age), https://www.cdc.gov/ncbddd/disabilityandhealth/impacts/new-york.html (June 28, 2021); United States Census Bureau, Quick Facts: New York, https://www.census.gov/quickfacts/NY (last visited Oct. 29, 2021).

52. Plaintiff's claims are typical of the claims of the class as a whole because plaintiff is similarly affected by the violations described herein.

53. Defendant has acted and/or failed to act on grounds generally applicable to the class as a whole, making final declaratory and injunctive relief appropriate with respect to the class as a whole.

## FIRST CAUSE OF ACTION

### Violation of the Americans with Disabilities Act

54. Plaintiff and the class re-allege and incorporate herein all previously alleged paragraphs of this complaint.

55. The Americans with Disabilities Act ("ADA") prohibits discrimination by public accommodations. The ADA's general prohibition against discrimination guarantees that:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who own, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

56. Plaintiff and the class re-allege and incorporate herein all previously alleged paragraphs of this complaint.

57. MMG's service and the doctors' offices in which it is provided is a public accommodation. 42 U.S.C. § 12181(7)(F) ("Public accommodation" includes a "professional office of a health care provider, hospital, or other service establishment.").

58. The ADA prohibits unlawful disability discrimination, whether "directly or through contractual or licensing arrangements." Discrimination includes:

   i. Denial or unequal or segregated provision of "goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(l)(A)(i).

  ii. Failure to provide goods, services, facilities, privileges, advantages, or accommodations in the most integrated setting appropriate. 42 U.S.C. § 12182(b)(l)(B).

  iii. Failure to remove architectural barriers where such removal is readily achievable, building inaccessible facilities, and altering facilities without making them accessible; 42 U.S.C. § 12182 (b)(2)(A)(iv); 42 U.S.C. § 12183(a).

  iv. Failure to modify policies, procedures, and practices in a reasonable manner, when such modifications are necessary to ensure equal access for individuals with disabilities. 42 U.S.C. § 12182 (b)(2)(A)(ii).

  v. Failure to provide necessary auxiliary aids and services at facilities where provision of such auxiliary services does not create an undue burden and would not fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation. 42 U.S.C. § 12182 (b)(2)(A)(iii).

59. Defendant's violations of these legal mandates have resulted in substantial and ongoing harm to plaintiff as set forth above.

## SECOND CAUSE OF ACTION

### Violation of the New York State Human Rights Law

60. Plaintiff and the class re-allege and incorporate herein all previously alleged paragraphs of the Complaint.

61. The New York State Human Rights Law ("NYSHRL") provides, "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability ... of any person, directly or indirectly, to refuse, withhold from or deny to such person

any of the accommodations, advantages, facilities or privileges thereof." N.Y Exec. Law § 296(2)(a).

62. The NYSHRL defines "public accommodation" broadly; the definition includes "establishments dealing with goods or services of any kind, dispensaries, clinics, hospitals …." Executive Law § 292(9).

63. The NYSHRL defines "discriminatory practice" to include:

  i. a refusal to make reasonable modification in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations;

  ii. a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation begin offered or would result in undue burden;

  iii. a refusal to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities where such removal is readily achievable; and

  iv. where such person can demonstrate that the removal of a barrier under subparagraph (iii) of this paragraph is not readily achievable, a failure to make such facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

N.Y. Exec. Law§ 296(2)(c)(i)-(iv).

64. By the conduct described above, defendant has committed unlawful discriminatory practices against plaintiff and have violated the New York State Human Rights Law.

### THIRD CAUSE OF ACTION

### Violation of the New York City Human Rights Law

65. Plaintiff and the class re-allege and incorporate herein all previously alleged paragraphs of the Complaint. The New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code§ 8-107(4)(a) provides, "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation…because of the actual or perceived ... disability ... [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation."

66. The NYCHRL defines the term "place or provider of public accommodation" to include "providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold, or otherwise made available." NYCHRL § 8-102.

67. The NYCHRL specifically defines as unlawful discrimination the failure to provide a "reasonable accommodation," which "means such accommodation that can be made that does not cause undue hardship in the conduct of the covered entity's business. The covered entity has the burden of proving undue hardship." NYCHRL §§ 8-102, 8-107(15).

68. Unlawful discrimination is also established under the NYCHRL where "a policy or practice of a covered entity or a group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter" (such as the class here), subject to an affirmative defense. NYCHRL § 8-107(17).

69. By the acts and conduct described above, defendant has committed unlawful discriminatory practices against plaintiff and the class and violated the New York City Human Rights Law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on her own behalf, and on behalf of the class, prays for the following relief against defendant:

a. That this matter be certified as a class action as set forth above, that plaintiff be appointed class representative, and her attorneys be appointed class counsel;

b. That defendant be enjoined from violating the Americans with Disabilities Act, the New York State Human Rights Law, and the New York City Human Rights Law;

c. That defendant be ordered to adopt policies and procedures sufficient to remedy the violations complained of herein;

d. For an Order finding and declaring that defendant's acts, omissions, policies, and practices as challenged herein are unlawful;

e. For and Order requiring defendant to provide accessible IMEs to all individuals who have been unable to complete their IMEs because of the violations described herein;

f. For an award of economic, compensatory, and punitive damages to named plaintiff;

g. For an award of reasonable attorneys' fees and costs; and

h. For such other relief that deem just and proper.

DATED:  New York, NY
October 29, 2021

                                        KAKALEC LAW PLLC

_____
Maia Goodell
195 Montague Street, 14th Floor
Brooklyn, NY 11201
(212) 705-8730
(646) 759-1587 (fax)
maia@kakaleclaw.com